UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CAROL F. HOLT | : | CIVIL ACTION NO. |
|    Plaintiff, | : | 3:09-CV-2069 (JCH) |
| | : | |
| v. | : | |
| | : | |
| TOWN OF STONINGTON, ET AL., | : | JUNE 23, 2010 |
|    Defendants. | : | |

**RULING RE: DEFENDANTS' MOTION TO DISMISS (Doc. No. 21)**

**I.   INTRODUCTION**

Plaintiff, Carol F. Holt ("Holt"), brings this action against defendants, the Town of Stonington, Connecticut ("the Town"), the Town of Stonington Zoning Board of Appeals ("the ZBA"), the Town of Stonington Planning and Zoning Commission, and John Larkin ("Larkin"), Zoning Enforcement Officer ("ZEO") for the Town of Stonington, in his individual and official capacity (collectively "Town defendants"), for declaratory and injunctive relief as well as damages for injuries she allegedly sustained as a result of defendants' actions with respect to her property located in the Town. Holt asserts a Connecticut common law claim of municipal estoppel as well as takings claims under the Fifth and Fourteenth Amendments of the United States Constitution and under Article First, § 11 of the Connecticut Constitution.

Town defendants move the court under Fed. R. Civ. P. 12(b)(6) to dismiss Holt's municipal estoppel claim on the ground that Holt has failed to state a claim upon which relief can be granted. Additionally, Town defendants move the court under Fed. R. Civ. P. 12(b)(1) to dismiss Holt's takings claims on the ground that the court lacks subject

matter jurisdiction to hear such claims.  For the following reasons, the court denies defendants' Motion to Dismiss with respect to the municipal estoppel claim, and the court grants defendants' Motion to Dismiss with respect to the takings claims.

## II.     FACTUAL BACKGROUND

Holt is the owner of a piece of property located in the Town at the intersection of Boulder Avenue and Hampton Street ("the Property").  Comp. at ¶ 8 (Doc. No. 1).  This property is approximately 7000 square feet, see Letter from Joseph M. Larkin to Carol Rooney, Feb. 4, 2005 ("Larkin Letter 2"), Ex. D to Comp., and is vacant, Comp. at ¶ 8.  It was previously owned by Carol Rooney ("Rooney") who sold it to Holt on May 12, 2005.  Id. at ¶ 17.

Prior to selling the Property, Rooney attempted to determine whether it was permissible to build on the Property.  On two prior occasions Rooney sought the opinion of Larkin, who confirmed that the Property could legally be built upon and described the limitations on the size of any new building.  See Letter from Joseph M. Larkin to Carol Rooney, Apr. 28, 2003, Ex. A to Comp.; Larkin Letter 2.  Rooney also challenged the Property's treatment, for tax purposes, as a valid building lot and lost.  Comp. at ¶ 23. Prior to selling the Property to Holt, Rooney relayed to Holt her communications with both Larkin and Jason Vincent, the Planning Administrator of the Town of Stonington, confirming that the Property could be built upon.  Id. at ¶ 30.  On May 24, 2005, after purchasing the Property, Holt met with Larkin in person to discuss her plans for the Property.  Id. at ¶¶ 31-35.  At this meeting, Larkin reiterated his earlier statements in his letters, indicating that Holt was permitted to build on the Property.  Id.  Additionally, during the summer of 2005, Larkin met with Holt's architect and did not indicate any

concern with Holt building on the Property.  Id. at ¶ 41.

On November 9, 2005, Holt submitted to Larkin a zoning permit application to build a house on the Property.  Id. at ¶ 44.  After failing to receive a response to her application, Holt published notice of Larkin's letter dated February 4, 2005, in the New London Day, on February 15, 2006.  Id. at ¶ 56.  A neighbor whose property abutted the Property, William H. Hescock ("Hescock"), filed an appeal before the ZBA seeking to set aside the interpretation found in Larkin's letter.  Id. at ¶¶ 45, 56.  The ZBA unanimously voted to reject Larkin's interpretation, apparently finding that the Property could not be built upon.  Id. at ¶ 65.[1]  Holt appealed this decision to Superior Court and, eventually, the Appellate Court of Connecticut, which held that the ZBA's review of Larkin's interpretation was inappropriate and directed the ZBA to dismiss Hescock's ZBA appeal.  Id. at ¶¶ 69, 76; see also Holt v. Zoning Bd. of Appeals, 114 Conn. App. 13, 29-30 (App. Ct. 2009) ("[T]he letter was a preliminary, advisory opinion and not a decision subject to appeal under General Statutes § 8-7 and § 8.10.2 of the regulations.").  On January 25, 2008, Larkin issued another letter purporting to revoke his previous interpretation.  Id. at ¶ 76.

Holt later unsuccessfully attempted to amend the zoning regulations in the Town to ensure her lot was buildable as set forth in Larkin's earlier communications.  Id. at ¶¶ 81-96.

Holt asserts that the Property "has lost virtually all of its value," id. at ¶ 80, and the Property "remains the only property in the Town of Stonington under 10,000 square

---

[1]The Complaint does not describe or allege the actual findings of the ZBA, except to say that the ZBA "overturned the decision of [Larkin] as set forth in the February 4 Letter."  Comp. at ¶ 65.

feet which can not be used," id. at ¶ 97.

### III.   STANDARD OF REVIEW

    A.   Standard of Review Under Rule 12(b)(6)

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court takes the allegations of the Complaint as true and construes them in a manner favorable to the plaintiff.  See, e.g., Hoover v. Ronwin, 466 U.S. 558, 587 (1984); Phelps v. Kapnolas, 308 F.3d 180, 184 (2d Cir. 2002).  The court must draw all reasonable inferences in the plaintiff's favor.  See, e.g., Yung v. Lee, 432 F.3d 142, 146 (2d Cir. 2005).

A motion to dismiss for failure to state a claim tests only the adequacy of the complaint.  See United States v. City of N.Y., 359 F.3d 83, 87 (2d Cir. 2004).  Bald assertions, and mere conclusions of law, do not suffice to meet the plaintiff's pleading obligations.  See Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 344 (2d Cir. 2006).  Instead, plaintiffs are obliged to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007), rev'd on other grounds sub. nom. Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft, 129 S. Ct. at 1949.

    B.   Standard of Review Under Rule 12(b)(1)

A case is properly dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)  when the district court lacks the statutory or constitutional power to adjudicate it.  See Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008);

Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In assessing a motion to dismiss for lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006). The court, however, refrains from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003).

On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff must establish by a preponderance of the evidence that the court has subject matter jurisdiction over the complaint. See Morrison, 547 F.3d at 170; see also Makarova, 201 F.3d at 113; Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996). A court evaluating a Rule 12(b)(1) motion "may resolve the disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

**IV.   DISCUSSION**

    A.    <u>Plaintiff's Municipal Estoppel Claim</u>

The Supreme Court of Connecticut has recently reiterated its four-part test for municipal estoppel claims. Holt must establish that:

> (1) an authorized agent of the [Town] ha[s] done or said something calculated or intended to induce [her] to believe that certain facts existed and to act on that belief; (2) [plaintiff] exercised due diligence to ascertain the truth and not only lacked knowledge of the true state of things, but also had no convenient means of acquiring that knowledge; (3) [plaintiff] ha[s] changed [her] position in reliance on those facts; and (4) [plaintiff] would be subjected to a substantial loss if the [Town] were permitted to negate the actions of its agents.

O'Connor v. City of Waterbury, 286 Conn. 732, 757-58 (2008). In the instant case, Holt

has pleaded sufficient facts to support a non-speculative right to relief under the municipal estoppel doctrine.

First, Holt has averred that Larkin, in his official capacity as ZEO, communicated on multiple occasions that the Property was able to be built upon under zoning regulations in effect at the time. See Comp. at ¶¶ 21-22, 30. Importantly, these actions were made prior to Holt's purchase of the Property. Id. While it is not clear from the Complaint if Larkin was aware of the impending purchase, based on the allegations, such an inference could be drawn. See id. at ¶¶ 18-19 (noting that Rooney's husband worked with Larkin); id. at ¶ 26 (stating that second letter request was made "[i]n anticipation of selling" the Property to Holt). Larkin might also reasonably have expected, given his position as ZEO, that the information he provided would be used in the aid of a sale of property that was vacant and surrounded by other buildings.

Second, the Complaint supports the inference that Holt acted reasonably by relying on Larkin's letters before purchasing the Property. Holt relied on her predecessor-in-interest, Rooney, who took multiple steps to ensure that the Property could be built upon and secured an opinion from Larkin in writing on two different occasions. See id. at ¶¶ 20, 23, 26, 30. Holt's only apparent alternative means of ascertaining the truth before purchasing the Property would have been to submit her permit application before the purchase or to seek some administrative review of Larkin's opinions. Neither of these options are particularly convenient, and they do not appear to the court to be reasonably required of the plaintiff in light of the clear statements from Larkin.

Third, Holt asserts that, in purchasing the Property, she relied on her ability to

build on the land, as indicated by Larkin's letters.  See id. at ¶¶ 29-30.

Fourth, Holt has asserted a "substantial loss."  The Connecticut Supreme Court has not "attempt[ed] to define a specific level of economic loss that would qualify as substantial."  Cortese v. Planning & Zoning Bd. of Appeals, 274 Conn. 411, 419 (2005). Claims have been rejected where "no basis exist[ed] . . . for equating the purchase price of the property with the plaintiff's loss."  Id. at 420.  However, in the present case, Holt has suggested that she purchased the Property with the intent to build on it, and that, absent that use, it has "lost virtually all of its value."  Comp. at ¶ 80.  It is certainly plausible that her purchase price was substantially inflated as a result of Larkin's initial letters and, if the Town is permitted to rescind these interpretations, Holt will experience a substantial loss.

The court is cognizant of the fact that "municipal estoppel should be invoked only with great caution" and that the plaintiff will bear a "substantial burden of proof" at the evidentiary stage.  Cortese, 274 Conn. at 418-19.  However, at this stage of the proceedings, the court is guided by the Federal Rules.  Holt has pled sufficient factual allegations to support a plausible claim of municipal estoppel.

Town defendants have made much of a statement found in Dickau v. Glastonbury—that "[e]quitable estoppel is available only for protection and cannot be used as a weapon of assault"—as an argument for preventing this action.  156 Conn. 437, 442 (1968); see Mem. of Law in Support of Mot. to Dismiss at 4 (Doc. No. 22). This description finds its roots in an early U.S. Supreme Court case, which described the principle of equitable estoppel as requiring a "change of position" and a "disappoint[ment] of expectations."  Dickerson v. Colgrove, 100 U.S. 578, 580-81

(1879). In the instant case, Holt has asserted that she has changed her position by purchasing the property with the expectation that her property would be treated according to the plain language of Larkin's first two letters. See Comp. at ¶¶ 29-30. Holt requests that the court grant her "[i]njunctive relief preventing the defendants from enforcing any zoning regulations" inconsistent with Larkin's original interpretation. Comp. at 23, ¶ 3. This form of relief is consistent with the protective nature of an equitable estoppel claim.

While several Connecticut trial courts have read Dickau to prevent municipal estoppel claims presented as affirmative causes of action, see, e.g., DJFM Props., LLC v. Wells Fargo Bank, 2006 WL 2730150, at *3 (Conn. Super. Ct. Sept. 5, 2006); Brown v. Bienas, 2003 WL 1962103, at *7 (Conn. Super. Ct. Apr. 1, 2003); Middletown Commercial Assocs. v. City of Middletown, 1994 WL 116306, at *4 (Conn. Super. Ct. Mar. 9, 1994),[2] the only appellate court to have directly discussed the issue noted that "estoppel is generally not considered a cause of action," Covey v. Comen, 46 Conn. App. 46, 48 n.5 (App. Ct. 1997) (emphasis added). The most recent Connecticut Supreme Court cases to address municipal estoppel have involved just such an affirmative claim. See O'Connor, 286 Conn. at 733-34; Cortese, 274 Conn. at 413.[3] Taken to its logical conclusion, Town defendants would require Holt to begin to build a house on the Property and wait for the Town to enforce its zoning regulations to bring

---

[2] A number of Connecticut trial courts have permitted causes of actions directly requesting municipal estoppel. See, e.g., Levine v. Town of Sterling, 2009 WL 2506294, at *1 (Conn. Super. Ct. July 14, 2009); Munch v. Town of Sherman, 2006 WL 2053875, at *1 (Conn. Super. Ct. July 10, 2006).

[3] Both cases arrived in the Connecticut courts via appeals from administrative bodies. However, neither case termed the plaintiffs' estoppel claims "special defenses."

this claim. This, however, makes little sense, as the loss Holt is asserting is not as a result of her interrupted construction, but rather her purchase of the property at an inflated price.

Holt has successfully pled a plausible municipal estoppel claim. Defendants' Motion to Dismiss this claim is therefore denied.

### B.     Plaintiff's Takings Claims

Holt asserts a takings claim under the Fifth and Fourteenth Amendments of the United States Constitution and under Article First, § 11 of the Connecticut Constitution. For the following reasons, Holt's claims are not ripe for review, and this court lacks subject matter jurisdiction to hear them.

#### 1.     Federal Ripeness Doctrine

The analysis of a plaintiff's federal takings claim is governed by the two-part ripeness test presented by the Supreme Court in Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985); see Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005) (noting that the Williamson County test specifically governs "land use disputes"). In order to satisfy the first prong of this test, a plaintiff is "required to obtain a final definitive position as to how [she] could use the property from the entity charged with implementing the zoning regulations." Murphy, 402 F.3d at 348. Additionally, under the second prong, a plaintiff "must seek compensation for an alleged taking before proceeding to federal court." Id. at 349.

Holt plainly falls short under the first prong of the ripeness inquiry due to her failure to allege any attempt to seek a variance from the ZBA. The case law is clear

that the court's review of this case is "condition[ed] . . . on [a plaintiff having] submitted at least one meaningful application for a variance." Id. at 348; see also Williamson County, 473 U.S. at 190 (finding the failure to request a variance meant that the developer had "not yet obtained a final decision").

The Second Circuit has acknowledged a futility exception to the finality requirement. See Murphy, 402 F.3d at 349 ("[A] property owner need not pursue [an] application[] when a zoning agency . . . has dug in its heels and made clear that all such applications will be denied."); Southview Assocs., Ltd. v. Bongartz, 980 F.2d 84, 98-99 (2d Cir. 1992). However, Holt cannot simply invoke futility, but rather must allege "the inevitability of a refusal" of her variance application. Osborne v. Fernandez, 2009 WL 884697, at *5 (S.D.N.Y. Mar. 31, 2009). Further, the failure "to file at least one, meaningful application" has been held, "as a matter of law," to preclude reliance on the futility exception. Celentano v. City of West Haven, 815 F. Supp. 561, 569-70 (D. Conn. 1993); see also Osborne, 2009 WL 884697, at *5.

Holt has not alleged sufficient facts to support a plausible claim of futility. While Holt cites to some practices within the ZBA that might cause the court to question its status as a neutral and unbiased body, see Comp. at ¶¶ 57-68, the court finds that Holt's failure to allege even one application for a variance is sufficient, as a matter of law, to prevent her from relying on the futility exception.[4]

---

[4] Because Holt has failed to satisfy the first prong of the ripeness analysis, her claim is not ripe and the court need not consider the second prong of the Williamson County test. However, the court notes that even if, as Town defendants argue, a takings claim under the Connecticut Constitution must be pursued prior to a federal constitutional claim, Holt has asserted this court's diversity jurisdiction under 28 U.S.C. § 1332, and thus this court would have proper jurisdiction to hear her Connecticut claim. See Vulcan Materials Co. v. City of Tehuacana, 238 F.3d 382, 385-86 (2001); SK Fin. SA v. La Plata County, Bd. of Comm'rs, 126 F.3d 1272, 1276 (1997). Holt could therefore plead her state claim and, to avoid the risk of collateral estoppel in a later proceeding, plead her federal claim in the alternative if her state claim

2. Connecticut Ripeness Doctrine

Connecticut has a ripeness inquiry similar to that found in Williamson County, requiring "a final decision [to have] been rendered by the initial decision maker." Cumberland Farms, Inc. v. Town of Groton, 247 Conn. 196, 204 (1998) (emphasis removed). In the context of variances, the "initial decision maker" is the ZBA, "'when that body is not acting in a reviewing capacity but is exercising its power to grant variances and exceptions.'" Id. (quoting Port Clinton Assocs. v. Bd. of Selectmen, 217 Conn. 588, 606-07 (1991)) (emphasis removed). As with her federal claim, Holt's state takings claim has not ripened, because she has not alleged a rebuffed attempt to seek a variance from the ZBA.

Connecticut also permits a plaintiff to assert that any application for a variance on her part would be futile. See Neiman v. Yale Univ., 270 Conn. 244, 258; see also Lost Trail, LLC v. Town of Weston, 2009 WL 1532642, at *3 (Conn. Super. Ct. May 8, 2009) (applying Neiman in the context of finality analysis for a takings claim). However, Holt has failed to allege facts which plausibly support the conclusion that her application "could not result in a favorable decision and invariably would result in further judicial proceedings." Neiman, 270 Conn. at 259 (internal quotations and citation omitted). Even if she alleged that the ZBA "has indicated that it will rule against" her, Holt has not sufficiently supported her conclusory claim of futility. Id. As with her federal claim, Holt's failure to apply for a variance renders her Connecticut claim unripe.

---

fails. See San Remo Hotel, L.P. v. City & County of San Francisco, 545 U.S. 323, 346 (2005).

**III.     CONCLUSION**

For the foregoing reasons, the court denies the defendants' Motion to Dismiss (Doc. No. 21) with respect to the plaintiff's first count of municipal estoppel.  The court grants the defendants' Motion to Dismiss with respect to plaintiff's second count of taking without compensation under the U.S. and Connecticut constitutions.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 23rd day of June, 2010.


　　　　　　　　　　　　　　　　 /s/ Janet C. Hall
　　　　　　　　　　　　　　　　Janet C. Hall
　　　　　　　　　　　　　　　　United States District Judge