UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CAROL F. HOLT,<br>　　Plaintiff,<br><br>　　v.<br><br>TOWN OF STONINGTON, ET AL.,<br>　　Defendants. | CIVIL ACTION NO.<br>3:09-CV-2069 (JCH)<br><br>NOVEMBER 17, 2011 |

**RULING RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**
**(Doc. Nos. 77, 80, 83)**

## I. INTRODUCTION

Plaintiff, Carol F. Holt, brings this action against defendants, the Town of Stonington, Connecticut ("the Town"), the Town of Stonington Zoning Board of Appeals ("the ZBA"), the Town of Stonington Planning and Zoning Commission ("the PZC"), and John Larkin ("Larkin"), Zoning Enforcement Officer for the Town of Stonington, in his individual and official capacity, for declaratory and injunctive relief, as well as damages, for injuries she allegedly sustained as a result of defendants' actions with respect to her property located in the Town.

Holt originally asserted three claims: a Connecticut common law claim of municipal estoppel (Count One), an alleged taking of her property (Count Two), and an equal protection claim pursuant to the Fifth Amendment, Fourteenth Amendment, and 42 U.S.C. § 1983 (Count Three). See Compl. 20–22. The court previously dismissed Counts Two and Three for lack of jurisdiction. See Ruling Re: Defs.' Mot. To Dismiss at 12 (Doc. No. 38); Ruling Re: Defs.' Mot. To Dismiss at 5 (Doc. No. 73). Accordingly,

1

the only remaining claim is for municipal estoppel against all defendants.[1]  For the following reasons, the court grants summary judgment in favor of defendants the Town of Stonington Zoning Board of Appeals, the Town of Stonington Planning and Zoning Commission and John Larkin, in his individual capacity.  The court denies summary judgment with respect to the Town of Stonington.

II.    FACTUAL BACKGROUND

Ms. Holt owns a vacant lot in the Town of Stonington.  Def. Joseph Larkin L.R. 56(a)(1) Stmt. ¶ 1 (hereafter "Larkin L.R. 56(a)(1) Stmt); Pl. Larkin L.R. 56(a)(2) Stmt. ¶ 1.  In 1981, prior to Ms. Holt's ownership, approximately 1000 square feet of land was transferred from the vacant lot to the neighboring lot at 57 Boulder Avenue.  See Defs. Zoning Bd. of Appeals and Planning and Zoning Comm'n L.R. 56(a)(1) Stmt. ¶¶ 22–23, 29 (hereafter "ZBA & PZC L.R. 56(a)(1) Stmt."); Pl.'s Zoning Bd. of Appeals and Planning and Zoning Comm'n L.R. 56(a)(2) Stmt ¶ 22–23, 29 (hereafter "ZBA & PZC L.R. 56(a)(2) Stmt."); Def. Larkin Mem. Supp. Summ. J., Ex. G.  Carol Rooney owned the vacant lot before Ms. Holt.   See ZBA & PZC 56(a)(1) Stmt. ¶ 12; ZBA & PZC 56(a)(2) Stmt. ¶ 12. Ms. Rooney's husband, James Rooney, was aware of the transfer when his wife sold Ms. Holt the property.  See ZBA & PZC 56(a)(1) Stmt. ¶ 22; ZBA & PZC 56(a)(2) Stmt. ¶ 22.  Mr. Rooney, however, did not inform Ms. Holt of the transfer

---

[1] Defendant Larkin asserts in his brief that Count Three remains pending against Larkin in his individual capacity.  Mem. Supp. Def. Larkin Mot. Summ. J. at 2, n. 2.  The Complaint pled Count Three against all defendants.  See Compl. at 20–22.  The court previously dismissed Count Three for lack of jurisdiction.  See Ruling Re: Defs.' Mot. To Dismiss at 3–4 (Doc. No. 73).  To the extent Count Three remains pending against Larkin in his individual capacity, the court dismisses Count Three in favor of Larkin in his individual capacity for the reasons stated in the previous ruling.

2

before his wife sold her the lot.  See ZBA & PZC L.R. 56(a)(1) Stmt. ¶ 23; ZBA & PZC L.R. 56(a)(2) Stmt. ¶ 23.

Ms. Holt purchased the property in May 2005.  Larkin L.R. 56(a)(1) Stmt. ¶ 6; Larkin L.R. 56(a)(2) Stmt. ¶ 6.  On April 28, 2003, Joseph Larkin, acting in his capacity as a Zoning Enforcement Officer, provided Ms. Rooney with a letter stating that the maximum size home that could be built on the property was approximately 1000 square feet ("the 2003 letter").  ZBA & PZC L.R. 56(a)(1) Stmt. ¶ 13; ZBA & PZC L.R. 56(a)(2) Stmt ¶ 13.  On April 29, 2003, Ms. Rooney received notification that the Water Pollution Control Authority would approve a sewer hook-up for the property.  ZBA & PZC L.R. 56(a)(1) Stmt. ¶ 17; ZBA & PZC L.R. 56(a)(2) Stmt. ¶ 16.  In May 2003, Ms. Rooney unsuccessfully appealed a tax increase on the property that resulted from the lot's assessment as a buildable lot.  ZBA & PZC L.R. 56(a)(1) Stmt. ¶¶ 15–16; ZBA & PZC 56(a)(2) Stmt. ¶¶ 15–16.  Finally, on February 4, 2005, Mr. Larkin wrote another letter to Ms. Rooney ("the 2005 letter"), stating that under new zoning regulations, any residence built on the property could not exceed 1750 square feet.  See ZBA & PZC L.R. 56(a)(1) Stmt. ¶ 19; ZBA & PZC L.R. 56(a)(2) Stmt. ¶ 19; ZBA & PZC Mot. Summ. J., Ex. K.

Ms. Holt's realtor provided her with the 2003 letter and the 2005 letter prior to her purchase of the lot.  ZBA & PZC 56(a)(1) Stmt. ¶ 21; ZBA & PZC 56(a)(2) Stmt. ¶ 21.  In addition, on February 22, 2005, prior to her purchase, Ms. Holt met with Mr. Larkin to discuss the size and type of home she could build on the property.  ZBA & PZC 56(a)(1) Stmt. ¶ 24; ZBA & PZC 56(a)(2) Stmt. ¶ 24.  Ms. Holt did not discuss the 1981 transfer of the strip of land with Mr. Larkin at this meeting.  ZBA & PZC 56(a)(1) Stmt. ¶ 25; ZBA & PZC 56(a)(2) Stmt. ¶ 25.  On November 9, 2005, Ms. Holt filed a Zoning Permit

Application for the construction of a new house on the vacant property. ZBA & PZC 56(a)(1) Stmt. ¶ 27; ZBA & PZC 56(a)(2) Stmt. ¶ 27.

On November 28, 2005, a lawyer representing William Hescock, a neighbor whose land abutted the vacant lot, sent a letter to Mr. Larkin, informing him of the prior land transfer between the vacant lot and the 57 Boulder Avenue lot. Larkin 56(a)(1) Stmt. ¶ 10; Pl.'s Larkin 56(a)(2) Stmt. ¶ 10. The parties dispute whether this letter was the first time Mr. Larkin was made aware of the transfer. See ZBA & PZC 56(a)(1) Stmt. ¶ 29; ZBA & PZC 56(a)(2) Stmt. ¶ 29. Mr. Hescock's lawyer asked Mr. Larkin to reconsider his 2005 letter, as the land transfer may prevent the vacant lot from being buildable. ZBA & PZC 56(a)(1) Stmt. ¶ 28; ZBA & PZC 56(a)(2) Stmt. ¶ 28. In light of this information, Mr. Larkin sought an opinion from the Town attorney, who determined that, due to the transfer, the vacant lot no longer qualified as buildable. ZBA & PZC 56(a)(1) Stmt. ¶¶ 30–31; ZBA & PZC 56(a)(2) Stmt. ¶¶ 30–31. On January 6, 2006, Ms. Holt withdrew her application for a zoning permit. ZBA & PZC 56(a)(1) Stmt. ¶ 32; ZBA & PZC 56(a)(2) Stmt. ¶ 32.

On March 1, 2006, Mr. Hescock filed an appeal with the Stonington ZBA, seeking to overturn the 2005 letter's conclusion that the vacant lot was buildable. See ZBA & PZC 56(a)(1) Stmt. ¶ 33; ZBA & PZC 56(a)(2) Stmt. ¶ 33. On June 13, 2006, the ZBA overturned the 2005 letter, finding that the vacant lot was not buildable. ZBA & PZC 56(a)(1) Stmt. ¶ 34; ZBA & PZC 56(a)(2) Stmt. ¶ 34. Ms. Holt appealed the ZBA's decision to the Superior Court, which determined that the 2005 letter did not constitute a "decision" which could be appealed to the ZBA, and consequently, the ZBA lacked jurisdiction. See ZBA & PZC 56(a)(1) Stmt. ¶ 35; ZBA & PZC 56(a)(2) Stmt. ¶ 35; Holt

v. Zoning Board of Appeals of the Town of Stonington, 2007 WL 1599674, at *7 (May 16, 2007). The Appellate Court affirmed the decision, and remanded with instructions to the ZBA to dismiss the appeal. See ZBA & PZC 56(a)(1) Stmt. ¶ 36; ZBA & PZC 56(a)(2) Stmt. ¶ 36; Holt v. Zoning Board of Appeals of the Town of Stonington, 114 Conn. App. 13, 30 (Conn. App. Ct. 2009).

### III. STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau,

524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

## IV. DISCUSSION

### A. Bodies Politic

In order to state a cause of action, each party must be a legal entity with the legal capacity to sue and be sued. See Luysterborghs v. Pension Bd., 50 Conn. Sup. 351, 354 (2007). By statute, any municipality has the power to sue and be sued. Conn. Gen. Stat. § 7-1489(c)(1)(A). Municipality is defined as "any town, city or borough, consolidated town and city or consolidated town and borough." Conn. Gen. Stat. § 7-148(a). Unless municipal departments constitute separate "bodies politic" under state law, the proper defendant is the municipality, not the municipality's administrative subdivision. See Levine v. Fairfield Fire Dep't., 1999 WL 241734, at *3 (Conn. Super. April 19, 1999). In determining whether a municipal board constitutes a separate body politic, courts have looked to whether a specific statute enables the board to sue or be sued. See Luysterborghs, 50 Conn. Sup. at 355.

Connecticut law does not generally establish that all municipal subdivisions are legal entities separate from the municipality itself. See Luysterborghs, 50 Conn. Sup. at 355. Instead, the legislature has explicitly granted such independent legal status only to certain specific departments. See, e.g., Conn. Gen. Stat. § 10-241 ("Each school district shall be a body corporate and shall have the power to sue and be sued"); Conn.

Gen. Stat. § 7-233e (stating that municipal electric energy cooperatives are classified as "a public corporate body and politic" and may "sue and be sued"). Courts have found the absence of a specific enabling statute to be dispositive in determining that a municipal body is not a distinct body politic. See, e.g., Luysterborghs, 50 Conn. Sup. at 356 (holding that municipal pension boards may not be sued); Himmelstein v. Town of Windsor, 2006 WL 1493229, at *3 (May 16, 2006) ("[M]unicipal police departments do not constitute an independent legal entity amenable to suit.").

        1.      Defendant Stonington Planning and Zoning Commission

Pursuant to the General Statutes, a municipality is authorized to establish a zoning commission which may exercise the powers set forth in Chapter 124. Conn. Gen. Stat. § 8-1(a). In addition, section 8-19 authorizes a municipality to establish a planning commission, which may exercise the powers set forth in Chapter 126. Conn. Gen. Stat. § 8-19(a). Alternatively, a municipality may designate its zoning commission or its planning commission as the planning and zoning commission, which may exercise the powers and duties of both a planning commission and a zoning commission. Conn. Gen. Stat. § 8-4a. None of these statutes designate the zoning commission, the planning commission, or the planning and zoning commission as a separate legal entity or body politic. See Conn. Gen. Stat. § 8-1, § 8-19, § 8-4a. In addition, none of the statutes state that any of these commissions may sue or be sued. Id.

Both parties agree that the issue of whether a planning and zoning commission may be sued individually is an issue of first impression. See Pl. Objection to ZBA & PZC Mot. Summ. J. at 11; Def. ZBA & PZC Reply to Pl. Objection at 1–2. Ms. Holt attempts to support her position by pointing to one case where a planning and zoning

7

commission was a defendant; however, even she admits that the issue of whether the planning and zoning commission was the proper defendant was not raised in that case. See Pappas v. Town of Enfield, et al., 2010 WL 466009 (D. Conn. Feb. 3, 2010); Pl. Objection to ZBA & PZC Mot. Summ. J. at 12, n. 2. The fact that a suit was allowed to go forward against a planning and zoning commission where its legal status was uncontested does not support the conclusion that the commission is a separate legal entity. See Luysterborghs, 50 Conn. Sup. at 357. Accordingly, the court does not find the Pappas case to be instructive.

In addition, Ms. Holt attempts to distinguish her claim by drawing a line between monetary damages and declaratory relief. See Pl. Objection to ZBA & PZC Mot. Summ. J. at 11. The caselaw, however, does not support this distinction. See e.g., Luysterborghs, 50 Conn. Sup. at 355–56 (failing to mention the type of relief sought). Absent any legal authority to support this distinction, the court will not recognize it.

Finally, Ms. Holt asserts that the PZC is a proper defendant because Mr. Larkin acted as a representative of the PZC and "is considered a member of the PZC" by virtue of the fact that Jason Vincent, the Director of Planning, was Mr. Larkin's supervisor. See Pl. Objection to ZBA & PZC Mot. Summ. J. at 12. Even assuming Ms. Holt is correct that Mr. Larkin acted as a representative of the PZC, Ms. Holt does not point to any legal authority to support the assertion that the actions of a representative may transform a municipal board into a legal entity capable of being sued individually. See id. Consequently, neither of these assertions raises a material issue of fact or a legal basis with regard to whether the PZC itself is a body politic.

The legislature has not specifically authorized a planning and zoning commission as a separate legal entity or body politic with the power to sue and be sued. See Conn. Gen. Stat. § 8-1, § 8-19, § 8-4a. The weight of legal authority supports defendant PZC's assertion that, absent such an enabling statute, the PZC is not a proper defendant. See Luysterborghs, 50 Conn. Sup. at 355–56; Himmelstein, 2006 WL 1493229, at *3; Levine, 1999 WL 241734, at *3. As Ms. Holt fails to raise a material issue of fact or a legal basis to draw this authority into question, the court grants summary judgment in favor of the Stonington Planning and Zoning Commission.

2. Defendant Stonington Zoning Board of Appeals

Any municipality with a zoning commission must also establish a zoning board of appeals. See Conn. Gen. Stat. § 8-5. The powers and duties of the zoning board of appeals are set forth in Section 8-6 of the General Statutes. Notably, neither Section 8-5 nor Section 8-6 designates the zoning board of appeals as a separate legal entity from the municipality, or authorizes the board to sue and be sued. Conn. Gen. Stat. § 8-5, § 8-6. Ms. Holt alleges without support that Mr. Larkin is "staff to the ZBA," implying that this allegation supports her claim against the ZBA. See Pl. Objection to ZBA & PZC Mot. Summ. J. at 12. For the same reasons articulated above with respect to the PZC, Ms. Holt fails to raise a material issue of fact or a legal basis to support her claim against the ZBA. Accordingly, the court grants summary judgment in favor of the Stonington Zoning Board of Appeals.

B. Municipal Estoppel

Municipal estoppel should only be invoked with great caution. See Cortese v. Planning & Zoning Bd., 274 Conn. 411, 418–19 (2005). As a result, case law imposes

9

a significant burden of proof on any party invoking municipal estoppel. See id. at 419. To meet that burden, the party must establish that:

> (1) an authorized agent of the municipality . . . [did] or said something . . . intended to induce the party to believe that certain facts existed and to act on that belief; (2) the party . . . exercised due diligence to ascertain the truth and not only lacked knowledge of the true state of things, but also had no convenient means of acquiring that knowledge; (3) the party . . . changed its position in reliance on those facts; and (4) the party would be subjected to substantial loss if the municipality were permitted to negate the acts of its agents.

O'Connor v. City of Waterbury, 286 Conn. 732, 757–58 (2008).

### 1. Defendant John Larkin, Individually

A party may only invoke municipal estoppel where the zoning violation at issue was "unjustifiably induced by an agent having authority in such matters." Cortese, 274 Conn. at 418. Apparent authority is determined based on the actions of the agent's principal. See Hall-Brook Found. v. Norwalk, 58 Conn. App. 340, 345 (2000). First, the principal must either hold the individual out as possessing sufficient authority, or knowingly allow the individual to act as if he has such authority. See id. Second, the party dealing with the individual must have reasonably and in good faith believed that the individual had the authority to bind the principal. See id. at 345–46.

Ms. Holt has failed to raise any material issue of fact asserting that the Town of Stonington held out Mr. Larkin in his individual capacity as possessing sufficient authority to bind the Town with his actions or that in her dealings with Mr. Larkin, she believed that he, as an individual, had the authority to bind the Town. Instead, Ms. Holt asserts that the municipal estoppel claim should apply against Mr. Larkin because he "is responsible for reviewing and approving the zoning permits for the Town." Pl. Objection to Larkin's Mot. Summ. J. at 19. This assertion, however, provides support

10

for a municipal estoppel claim against Mr. Larkin in his capacity as a Zoning Enforcement Officer, not in his individual capacity. Consequently, Ms. Holt has failed to raise a material issue of fact to support her claim of municipal estoppel against Mr. Larkin in his individual capacity.

    2.    Defendant Town of Stonington

        a.    Due diligence

The Town first argues that Ms. Holt's claim must fail because she did not exercise due diligence. See Town Mem. Supp. Mot. Summ. J. at 15. When invoking municipal estoppel, a party must show that she not only exercised due diligence, but also that she "lacked knowledge of the true state of things" and "had no convenient means of acquiring that knowledge." See O'Connor, 286 Conn. at 758. In considering whether a party has met its burden, a court may consider "whether the plaintiffs as lay persons could be reasonably expected to undertake an investigation, and if so, whether that investigation would disclose a problem." Iovanna v. Zoning Board of Appeals, 2008 WL 4072815, at *4 (Aug. 7, 2008).

The parties do not dispute that Mr. Rooney knew of the land transfer before his wife sold the vacant lot to Ms. Holt. Def. Town L.R. 56(a)(1) Stmt. ¶ 22; Pl. Town L.R. 56(a)(2) Stmt. ¶ 22. It is also not in dispute that Mr. Rooney did not tell Ms. Holt about the transfer before she purchased the property. Def. Town L.R. 56(a)(1) Stmt. ¶ 23; Pl. Town L.R. 56(a)(2) Stmt. ¶ 23. Nonetheless, the Town asserts that Ms. Holt's failure to inquire of Mr. Rooney whether "there were any issues with the Vacant Property" prevents her from establishing due diligence. See Town Mem. Supp. Mot. Summ. J. at 14–15.

In response, Ms. Holt argues that she exercised due diligence by acquiring the 2003 letter and the 2005 letter from her realtor prior to purchasing the property. See Objection Town Mot. Summ. J. at 13–14; Town L.R. 56(a)(1) Stmt. ¶ 21; Town L.R. 56(a)(2) Stmt. ¶ 21. In addition, Ms. Holt also met with Mr. Larkin herself before purchasing the property, "to discuss the size and type of home that could be built on the property." Town L.R. 56(a)(1) Stmt. ¶ 24; Town L.R. 56(a)(2) Stmt. ¶ 24. Based on the evidence in the record, a jury could reasonably find that Ms. Holt exercised due diligence in her investigation of the property.

    b.  Reasonable Reliance

The Town next argues that Ms. Holt cannot meet her burden of proof to show that an authorized agent of the Town did something to induce her belief of certain facts. The Town contends that Ms. Holt is collaterally estopped from meeting her burden by demonstrating that she relied on Mr. Larkin's letters. See Town Mem. Supp. Mot. Summ. J. at 24. In order to invoke municipal estoppel, a party must demonstrate that "the government agent who induced the detrimental reliance had authority to act in such matters." Zotta v. Burns, 8 Conn. App. 169, 175 (1986).

The Town asserts that Ms. Holt is collaterally estopped from relying on Mr. Larkin's letters because, in previous litigation, the Appellate Court of Connecticut determined that Mr. Larkin's letters did not have legal effect. See Town Mem. Supp. Mot. Summ. J. at 22–23. Collateral estoppel is a judicially created doctrine to be enforced on public policy grounds, resting on the principle that once an issue of fact is actually litigated and determined by a valid, final judgment, the issue cannot be

12

relitigated by the same parties in a future lawsuit. See Cumberland Farms v. Town of Groton, 262 Conn. 45, 58–59 (2002).

The Town contends that the Appellate Court's determination that Mr. Larkin's letter was merely advisory and did not constitute a "final determination" collaterally estops Ms. Holt from meeting her burden by demonstrating that the letters were intended to induce her reliance. See Town Mem. Supp. Mot. Summ. J. at 23–24. The Town asserts that since the Appellate Court determined that such a letter issued by Larkin was not a final determination, it follows that Larkin lacks the authority to bind the Town for municipal estoppel purposes as well. See Reply to Pl.'s Objection to Town Mot. Summ. J. at 8–9. Ms. Holt responds by arguing that the issue in the previous litigation of whether Mr. Larkin's letter constituted a final, appealable decision differs from the question at issue here, namely whether the letters were intended to induce her belief in certain facts. See Pl.'s Objection to Town Mot. Summ. J. at 17.

The Appellate Court's decision explicitly states that "[t]he issue in this case . . . is a narrow one concerning whether Larkin's February 4, 2005 letter enunciated an appealable decision." Holt v. Zoning Board of Appeals, 114 Conn. App. 13, 29 (2009). Although the court concluded that Mr. Larkin's letter was merely advisory, rather than a final decision subject to appeal, the Appellate Court did not conclude that Mr. Larkin acted outside the scope of his authority in issuing the letters. See id. at 29 ("We understand that zoning enforcement officers . . . frequently provide informal advice, counsel and expertise to local citizens. We understand as well that such assistance provides a valuable service as individuals make decisions relating to their property."). The Town conflates the two conclusions in arguing that the previous decision bars Ms.

13

Holt from relying on Mr. Larkin's letters to prove municipal estoppel. It has been settled that the 2005 letter was not a final decision, subject to appeal; however, it does not necessarily follow from that conclusion that Larkin was not acting as the Town's authorized agent when he issued the letters for the purposes of municipal estoppel. Furthermore, in determining that Larkin's letters were not appealable, the Appellate Court examined Larkin's role pursuant to statutory law. See id. at 20–21. This examination of Larkin's role within the statutory scheme does not necessarily equate to an examination of Larkin's role under common law for the purposes of Holt's municipal estoppel claim.[2] Accordingly, Ms. Holt is not collaterally estopped from relying on Mr. Larkin's letters to meet her burden of proof.

Ms. Holt raises a material issue of fact with regard to the 2003 letter and the 2005 letter, both authored by Mr. Larkin in his capacity as a Zoning Enforcement Officer, and whether they were intended to induce her belief of certain facts, namely that the vacant lot she intended to purchase was buildable. See Iovanna, 2008 WL 4072815, at *3 (finding that a Zoning Enforcement Officer is an authorized agent of the town and that plaintiff's reliance on the officer's statements was reasonable). Given that Mr. Larkin, acting as Zoning Enforcement Officer, issued two separate letters asserting that the lot was buildable, a jury could reasonably find that the letters were meant to induce reliance on the part of the owner of the property. Consequently, summary judgment is not appropriate.

---

[2] The court notes that whether Larkin was an authorized agent of the Town and whether his actions were intended to induce Holt to believe the existence of certain facts and act on that belief is merely one element of Holt's claim. See O'Connor v. City of Waterbury, 286 Conn. 732, 757–58 (2008).

14

## V. CONCLUSION

For the reasons listed above, the court grants summary judgment in favor of the PZC, the ZBA, and Mr. Larkin in his individual capacity because Ms. Holt fails to raise a material issue of fact to support her claim of municipal estoppel against these defendants. The court denies summary judgment as to the Town of Stonington, however, because material issues of fact exist with regard to whether Ms. Holt exercised due diligence in her investigation of the property and whether her reliance on various communications was reasonable.

Accordingly, the court **grants** Summary Judgment in favor of defendants Stonington Zoning and Planning Commission (Doc. No. 80), Stonington Zoning Board of Appeals (Doc. No. 80) and Joseph Larkin in his individual capacity (Doc. No. 77). In addition, to the extent Count Three remains pending against defendant Joseph Larkin in his individual capacity, the court dismisses that claim. Finally, the court **denies** defendant Town of Stonington's Motion for Summary Judgment (Doc. No. 83).

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 17th day of November, 2011.

    /s/ Janet C. Hall
    Janet C. Hall
    United States District Judge